Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-2130

ILIANA CABÁN-RODRÍGUEZ,

Plaintiff, Appellant,

v.

JAVIER D. JIMÉNEZ-PÉREZ, Mayor of the Municipality of San
Sebastián; AGUSTÍN SOTO-CRUZ, Interim Director of the Human
Resources Office; ZORAIDA VERA  Director of Human Resources;
MUNICIPALITY OF SAN SEBASTIÁN; MARÍA MARTELL, Director of Office
of Faith Initiatives and Communities,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before
Thompson, Baldock,[*] and Lipez,
Circuit Judges.

Jose Martinez-Custodio, with whom Kenneth Colón was on brief,
for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
with whom Margarita L. Mercado-Echegaray, Solicitor General, was on
brief, for individual appellees.
Pedro R. Vázquez for municipal appellee.

March 12, 2014

---

[*] Of the Tenth Circuit, sitting by designation.

**BALDOCK, Circuit Judge.** Plaintiff Iliana Cabán-Rodríguez appeals the district court's grant of summary judgment to Defendants, namely the Municipality of San Sebastián (MSS), Javier D. Jiménez-Pérez, Agustín Soto-Cruz, Zoraida Vera, and María Martell, on Cabán's First Amendment claim of political discrimination/retaliation. The district court held Cabán failed to present evidence that would allow a reasonable jury to find Cabán's political affiliation was a substantial or motivating factor in what she labels adverse employment action. Our jurisdiction arises under 28 U.S.C. § 1291.

We review a grant of summary judgment de novo, applying the same legal standard as the district court. See Ruiz-Rosa v. Rullán, 485 F.3d 150, 155 (1st Cir. 2007). Accordingly, we will affirm only if Defendants have shown "that there is no genuine dispute as to any material fact and the [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is to say, viewing the evidence in a light most favorable to Cabán, we ask whether a jury properly could render a verdict in her favor upon the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We answer that question no, and affirm.

-2-

I.

In July 2001, Cabán commenced employment with Defendant MSS as secretary to the Clerk of the Municipal Assembly.[1] In August 2003, Cabán accepted a career position as an accounting clerk at the Department of Public Works.[2] Justo Medína of the New Progressive Party (NPP) was Mayor of MSS at the time. Cabán described her duties at public works as "prepar[ing] purchase orders in the attendance roster area" and "record[ing] purchase orders issued by the department." Aplt's App. at 104.

Medína did not run for reelection in 2004. Defendant Jiménez, also a member of the NPP, was elected Mayor that year and assumed office in January 2005. Cabán supported Jiménez's candidacy. A year later, in January 2006, MSS notified Cabán that her services were needed in the Purchases Office. Cabán described her duties in the Purchases Office as "keep[ing] a record book, or logbook for purchases at the department," and "earmarking budgeted items

---

[1] As we embark upon our factual recitation, we note counsel for Cabán's near-total failure to cite to the record in violation of Fed. R. App. P. 28(e). Cabán's opening brief cites the record but once and that makes this Court's job all the more difficult. See Aplt's Br. at 9. As a result, MSS argues Cabán has waived all arguments on appeal. While we choose not to invoke waiver in this particular instance, we admonish counsel for his malfeasance, lest he think it acceptable to violate the applicable rules of procedure in the future.

[2] To qualify for the position of accounting clerk with MSS, a candidate must have graduated "from high school supplemented by a course in bookkeeping from an accredited institution." Aplt's App. at 417.

according to the purchase orders."  Id. at 115.

Eleven months later, in December 2006, Cabán received a letter from Jiménez's office indicating her services were then needed in the Early Head Start (EHS) Program.  In a letter to Jiménez dated January 2007, Cabán objected to the transfer.  Cabán labeled her transfer to EHS as "persecution" (for what she did not say), stating that "if the real need of service existed in the Office of Purchases . . . there was no reason for transfer to the [EHS] Program."  Id. at 775.  Cabán received no response, and reported to her new position that same month.  Cabán described her duties at EHS as "record[ing] information about the budget," "performing bank statement reconciliation," and "mak[ing] entries into the voucher system, among other things."  Id. at 128.

After her transfer to EHS, Cabán decided to support Jiménez's opponent in the March 2008 NPP primary election for Mayor. Jiménez's opponent was former Mayor Medína.  Jiménez prevailed in both the primary and general elections, and was reelected Mayor of MSS.  Cabán described her participation in Medína's campaign as "a poll watcher" at a school.  Id. at 199-200.  Cabán also appeared in motorcades, and, "[o]n one occasion," in a radio program about a group of youngsters supporting Medína's candidacy.  Id. at 201. Cabán's "piece" in the program lasted around "two minutes."  Id. Throughout the mayoral election campaign and thereafter, Cabán continued to work at EHS without any reduction in salary or

benefits.

On August 31, 2009, twenty months after the primary election, MSS decided to discontinue sponsoring the EHS Program. Of the twenty-three or so individuals working at EHS, all but Cabán, a career employee, were laid off. On October 9, 2009, Jiménez received a letter from Nereida Oquendo, Acting Director of the Head Start Program (of which the EHS Program had been a part), stating Cabán had "no duties under her charge" and requesting she "be relocated to the position for which she was appointed." Id. at 410.

That same day, Jiménez also received a letter from Defendant Martell, Director of the Faith and Community Initiatives Office (FCIO). Martell's letter stated in relevant part:

> The work with cancer survivors, addicts, homeless people and bedridden patients take me enough time. For that reason, Your Honor, I am asking you, to the extent that you can, that you assign a person to me to perform the work at the Homeless Center. The Center is preparing daily, monthly and quarterly reports of the participants.
>
> It also has to prepare quarterly price quotations for the purchase of foods and inventories. At present, I am performing that work.
>
> By assigning a person to perform that work, I would be able to devote more time to our patients.

Id. at 411.

On October 15, 2009, Cabán received a letter from Defendant Soto in his capacity as Interim Director of the Department of Human Resources. During a two-week period in October 2009, Soto served

-5-

as Interim Director while Defendant Vera, Director of Human Resources, was on leave. Soto's letter informed Cabán of her transfer to the Emergency Shelter Program at the Homeless Center:

> You were on detail at the [EHS] Program of which our Municipality was a sponsor. Since last September 30, 2009, this program no longer is administered by the [MSS]. Mrs. Nereida Oquendo, Acting Director of the Head Start Program, has informed us that you do not have functions at this time.
>
> The Emergency Shelter Program for Homeless Persons (Homeless Center) does not have an Accounting Clerk; therefore it is urgent for us to have a person who can collaborate in this Department.
>
> Therefore . . . we hereby notify you that effective Monday, October 19, 2009, you will go on to exercise your functions as Accounting Clerk in the Emergency Shelter Program for Homeless Persons (Homeless Center) under the direct supervision of Mrs. Maria Martell . . . .

Id. at 780.

Rather than reporting to work at the Homeless Center, Cabán took a leave of absence and sought "medical, psychological and psychiatric treatment" from the State Insurance Fund (i.e., workman's compensation) Office. Id. at 17. Over three months later, on February 2, 2010, Cabán reported to Vera at the Human Resources Office. In a meeting with Vera and Martell, Cabán "asked if they could, please, relocate [her] to some other office." Id. at 159. Cabán acknowledged that during the meeting, Martell spoke to Cabán about her duties at the Center:

> Q    What were those duties that Ms. Martell told
>       you to perform.
> A    She spoke to me about inventories, price quotes,
>       and some reports.

Q    Did you perform the duties that Ms. Martell told
     you that you were going to be doing?
A    None.
Q    Why not?
A    Because they were not in harmony with my duties.

Id. at 160.

One month later, Cabán sent Jiménez a letter dated March 3, 2010.  Therein, Cabán expressed concern for her safety given the shelter's clientele and state of disrepair.  Cabán expressed overall frustration with her employment situation.  The letter concluded:

> [A]s of the moment of this communication I have not been provided the necessary equipment and materials, nor much less have I been advised or trained in the works that I am going to carry out with the functions in accordance to my position that were going to be delegated to yours truly after the transfer for alleged need of service . . . .
>
> I hereby request reconsideration and to be placed in an area where I can exercise my functions in accordance with my position.

Id. at 759.

Martell responded to Cabán on March 9, 2010, by outlining in a letter the tasks Cabán was to perform "as part of [her] duties as accounting clerk in the Homeless Center:"

- Participants' Daily Registry;
- Keep the records updated and orderly;
- Prepare weekly report of participants;
- Prepare weekly food inventory;
- Prepare weekly report of food consumption;
- Receive and file documentation on service authorizations for participants of the Center sent by Faith Communities Office;
- Prepare requisitions, price quotations and purchase orders related to work at the Center;

- Keep files, employee payrolls and volunteers who work water, electric power, sanitary license and fire department endorsement.

Id. at 419. Martell reminded Cabán that one of her duties as an accounting clerk was "[t]o complete and keep records and registries containing the corresponding information related to the work produced in the office." Id. Other duties described in the "position classification" of accounting clerk include, but are not limited to, "maintaining general controls over each municipal program allocation and line item," and "[e]nter[ing] information into the system related to the functions performed in the office." Id. at 416.

Cabán would hear none of it. On April 5, 2010 she wrote Jiménez another letter:

In communication dated March 9, 2010, I was delegated *some* tasks which are not part of my description of duties as Accounting Clerk . . . .

The tasks delegated to yours truly in the communication mentioned above mostly involve functions of lesser and inferior complexity . . . .

Id. at 763 (emphasis added). Cabán informed Jiménez that most of the tasks described in Martell's letter were to be performed either by an official buyer, a warehouse manager, or the cook. As a result, "no real need of immediate service of the undersigned in the Homeless Center arises." Id. And for the first time, Cabán accused Jiménez of political retaliation: "Without a doubt, your actions clearly show ill will, persecution and decisions made in

retaliation against yours truly for not supporting your political candidacy in the past internal primaries of the New Progressive Party (NPP)."  Id at 764.  Six months later, Cabán filed this § 1983 action.

II.

The only federal cause of action Cabán alleges in her amended complaint based on the foregoing facts arises under the First Amendment.  In this context, we see no distinction between a political discrimination and political retaliation claim.  See Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014) (First Amendment political discrimination includes "retaliation for a contrary political opinion").  To establish a prima facie case of political discrimination/ retaliation, first Cabán must demonstrate that she engaged in protected First Amendment conduct.  Id. at 301–02.  Second, Cabán must demonstrate that her conduct was a substantial or motivating factor in an adverse employment action, that action being Defendants' decision to transfer her to the Homeless Center.  Id. at 302.

The district court granted Defendants' motion for summary judgment.  The court implicitly recognized that Cabán's support for Mayor Jiménez's 2008 primary opponent constituted protected political conduct.  The court ruled, however, that Cabán "failed to point to evidence" sufficient to establish the second prong of her prima facie case:

> Plaintiff has failed to point to evidence that would allow a reasonable fact-finder to find that Plaintiff's political affiliation was a substantial or motivating factor for her transfer. Plaintiff references her own deposition on many occasions in an attempt to raise a factual dispute, however, such testimony merely amounts to a legal conclusion. . . . Other than Plaintiff's own statements claiming discrimination, Plaintiff points to no facts that would allow a reasonable jury to infer that Defendants discriminated against her due to her support for Medína. After reviewing the facts, the court cannot locate any facts that support Plaintiff's assertion.

Aplt's App. at 813.

On appeal, Cabán claims the record evidence is sufficient to establish that her support for past Mayor Medína in the 2008 primary election was a substantial or motivating factor in her transfer to the Homeless Center. To be sure, Cabán's tenure at the Homeless Center appears to have been unpleasant. Working conditions at the Homeless Center were far from ideal. Cabán's complaints to the MSS Fire Department and to the Puerto Rico Occupational Safety and Health Administration (OSHA) regarding the condition of the Center were not unwarranted. An OSHA inspection of the Homeless Center in late July 2010 revealed the presence of vermin, an excessive gathering of dust, dirt, and cobwebs, and leaks in the roof. See id. at 766–68. This inspection and other problems led MSS to permanently close the Homeless Center on November 1, 2010.[3]

---

[3] MSS subsequently transferred Cabán to the FCIO located in the municipal library. Cabán stated that since her most recent transfer, she has not complained about any duties Martell assigned her: "I have not complained, because I have performed them

-10-

Cabán's work (or lack thereof) and her surroundings at the Homeless Shelter undoubtedly were not to her liking. And, in some instances, an employee's transfer may amount to an adverse employment action for the purpose of establishing a prima facie case of discrimination. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir. 2010) (explaining that "[a]ctions short of dismissal or demotion," including transfers, are "adverse" if they "result in a work situation unreasonably inferior to the norm for the position" (citation and internal quotation marks omitted)). But less than ideal employment conditions, absent a showing of improper motivation, do not constitute First Amendment discrimination. Cabán's transfer to the Homeless Shelter came *twenty months after the primary election* in which she participated, so temporal proximity lends her discrimination claim no support. See Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 240 (1st Cir. 2012) ("While mere temporal proximity between a change of administration and an adverse employment action is insufficient to establish discriminatory animus, . . . it is relevant to whether political affiliation was a substantial or motivating factor in that adverse employment decision."). Moreover, Cabán's transfer came only after MSS decided to close the EHS Program and lay off all non-career employees of the Program. Additionally, Cabán was not without duties at the Homeless Center at least arguably related

---

voluntarily, to keep myself busy." Aplt's App. at 177.

-11-

to the job description of a low-level accounting clerk; regardless, she obstinately refused to perform those duties after her objections to the transfer fell on deaf ears.

As the district court recognized, Cabán has offered little evidence apart from her own say-so that Defendants, individually or collectively, had any political motivations in their treatment of her. That Cabán answered "none" to an interrogatory asking her to identify the witnesses she intended to call at trial illustrates the point. Aplt's App. at 285. Cabán's subjective beliefs simply are not evidence sufficient to counter Defendants' well-supported motion for summary judgment. See Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 871 (1st Cir. 1997). Cabán "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the [D]efendant[s] w[ere] motivated by a discriminatory animus." Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 5 (1st Cir. 1998) (internal quotation marks omitted). This, however, appears to be precisely what Cabán attempts to do.

Cabán asserts that while discovery was ongoing in the case, she witnessed Martell on June 14, 2011, writing a letter at her FCIO computer, printing the same, signing it, photocopying it, and then placing the original signed letter in the wastebasket. Cabán removed the letter from the wastebasket. *According to Cabán*, "[t]his letter had the date of October 9, 2009 and was pretending to be a request from Martell to have someone assigned to perform

food inventory duties at the Homeless Center." Aplt's Amend. Op. Br. at 7. In other words, Cabán says "the alleged necessity of [her] services at the Homeless Center was fabricated via a letter dated October 9, 2009 which was created by Martell on June 14, 2011." Id. at 9.

Unfortunately for Cabán, the record before us contains no evidence to support her assertion that Martell fabricated the October 9, 2009 letter to Jiménez after the fact. The letter Cabán claims to have removed from Martell's wastebasket is not part of the record, so neither are its contents. At oral argument, Cabán's counsel reluctantly acknowledged the letter as Cabán says she found it on June 14, 2011, is not before us. So all we have is Cabán's word. We well recognize that at the summary judgment stage, "we need not exclude all interested testimony, specifically testimony that is uncontradicted by the nonmovant." Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 856 (1st Cir. 2008). But, the "Best Evidence Rule requires that a party seeking to prove the 'content' of a writing must introduce the original or a 'duplicate' of the original" if the original is unavailable through no fault of the proponent. Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 107 n.9 (1st Cir. 2011). Cabán simply has not proven the contents of the letter she says she retrieved from Martell's wastebasket.

On top of that, Defendants have contradicted Cabán's claim

that Martell's October 9, 2009 letter was fabricated after the fact. Defendants have made part of the record a July 2012 report of a professional inspection of Martell's computer. According to the report of electrical engineer Ricardo Acevedo, proprietor of TEK Solutions, Inc.:

> The purpose of the [inspection] was to check creation and modification date of the document "letter to Mayor." After reviewing details of date and location of the document "letter to Mayor," I found that it was created and modified on Friday, October 9, 2009 at 11:23 am with a size of 21k. This document "Letter Mayor" was found to be located in the server whose address is P\MyDocuments\ letters, additionally a copy of the same was found on the local hard disk Dell Optoplex 330 in the location "Documents and settings\mmartell\ MyDocuments\letters" with the same above date. [I] did not find any other document with the same name at another date modified or created.

Aplt's App. at 806. Cabán's failure to introduce the letter so critical to her cause sounds her case's death knell.[4]

Because Cabán failed in the district court to establish a prima facie case of political discrimination/retaliation, the court's grant of summary judgment to Defendants on her First

---

[4] The only evidence that even remotely suggests political discrimination against Cabán is contained in the affidavit of her husband, Orlando Ortiz. Ortiz, a long time MSS employee, states Jiménez "told to Mayor Echevarria [of the Municipality of Aguada] that we [Ortiz and Cabán] should not participate in the primary on behalf of Mayor Medina." Id. at 754. Interestingly, Cabán does not mention this statement anywhere in her appellate argument. Nor did she to our record knowledge ever follow the statement's lead by questioning Jiménez about it or deposing Ortiz or Echevarria. Perhaps this is because the statement appears to constitute inadmissible double hearsay.

Amendment claim was proper.  As a result, the court acted well within its discretion, despite Cabán's ongoing protestations, in dismissing Cabán's commonwealth claims without prejudice.

AFFIRMED.